**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Jeffrey H. Dorfman
28 Liberty Street, 25th Floor
New York, New York 10005
Telephone: (212) 300-0375
Fax: (212) 481-1333

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSE MARTINEZ,**<br><br>    **Plaintiff,**<br><br>  -against-<br><br>**CONSULATE GENERAL OF ALGERIA IN NEW YORK,**<br><br>    **Defendant.** | **COMPLAINT** |

  Plaintiff Jose Martinez (hereinafter, "Plaintiff" or "Martinez"), individually, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

  1. This lawsuit seeks to recover overtime compensation, unlawful deductions, statutory penalties, compensatory and punitive damages, and other damages for Plaintiff, who worked as the personal driver for the General Counsel at the Consulate General of Algeria in New York (hereinafter, the "Algerian Consulate" or "Defendant"), located at 15 East 47th Street, New York, New York 10017.

  2. The Algerian Consulate paid Plaintiff a set monthly salary of $2,895.00 without compensating him overtime pay at time and one half his regular hourly rate for all hours worked in excess of 40 per workweek.

3. Defendant maintains a policy and practice whereby Plaintiff was unlawfully required to pay for costs associated with Plaintiff's position, including, but not limited to, parking tickets.

4. In addition to Plaintiff's wage claims, Plaintiff files this action to recover damages for discrimination based upon his disability. In that regard, Plaintiff informed Defendant that he suffered a heart attack and would undergo heart surgery, and requested time-off to recover as required by his doctors. However, less than three weeks after Plaintiff was discharged from the hospital after undergoing heart surgery, Defendant fired Plaintiff due to his disability, rather than providing him a reasonable accommodation.

5. Plaintiff brings this action for unpaid overtime and other wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*.

6. Plaintiff brings this action to recover damages for disability discrimination committed by Defendant against Plaintiff in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §8-107 *et seq*.

## THE PARTIES

**Plaintiff**

**Jose Martinez**

7. Martinez is an adult individual who is a citizen of the State of New York.

8. Martinez was employed by Defendant as the personal driver for the General Counsel at the Algerian Consulate from on or around November 20, 2011 to January 18, 2016.

9. Martinez is a covered employee within the meaning of the FLSA, the NYLL, and the NYCHRL.

10. A written consent form for Martinez is being filed with this Complaint.

**Defendant**

      **Consulate General of Algeria in New York**

11. Defendant Consulate General of Algeria in New York is a foreign state, or an agency or instrumentality of a foreign state, as defined by 28 U.S.C. § 1603.

12. Defendant Consulate General of Algeria in New York is a foreign government operating at 15 East 47 Street, New York, New York 10017.

13. The Algerian Consulate is a covered employer within the meaning of the FLSA, the NYLL, and the NYCHRL, and, at all times relevant, employed Plaintiff.

14. Upon information and belief, at all relevant times, the Algerian Consulate employed over four individuals.

15. At all relevant times, the Algerian Consulate has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll and other employment practices that applied to him. In fact, the Algerian Consulate is the entity that appeared on all of Plaintiff's paychecks.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's city law claims pursuant to 28 U.S.C. § 1367.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as Plaintiff is a citizen of New York State and Defendant is a citizen of a foreign State, and the amount in controversy exceeds $75,000.

18. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PLAINTIFF'S FACTUAL ALLEGATIONS

20. Consistent with their policies and patterns or practices as described herein, Defendant harmed Plaintiff as follows:

21. During his employment, Martinez generally worked the following hours, unless he missed time for vacation, sick days and/or holidays: five days per week from approximately 7:00 a.m. to 7:00 p.m. (averaging approximately 60 hours per week).

22. Throughout his employment as a personal driver, Defendant paid Martinez a fixed monthly salary of $2,895.00, regardless of the total number of hours he worked each week.

23. As a result, Plaintiff did not receive overtime pay at time and one half his regular hourly rate for all hours worked in excess of 40 per week.

24. For example, Martinez's regular hourly rate was $16.70 ($2,895.00 multiplied by 12, then divided by 52 weeks, to get his weekly pay rate, and then dividing that amount by 40 hours). Thus, Martinez's overtime rate should have been $25.05 ($16.70 multiplied by 1.5). Assuming Martinez worked 60 hours per workweek, he should have been paid $501.00 in overtime pay per week (20 hours multiplied by $25.05) in addition to his regular weekly pay.

25. In that regard, Defendant required Martinez to pick the General Counsel up at a scheduled time every morning. Martinez was required to first pick up the car at the garage, then clean the car, and finally drive to the General Counsel's residence. At all times while working for Defendant, Plaintiff was required to be ready to perform his duties at a moments notice. In that regard, Plaintiff was unable to use the time he spent between trips for his own

purposes, and was thus engaged to be waiting. Moreover, if Martinez wanted to take a day off, he had to get permission from Defendant.

26. Additionally, throughout his employment, Martinez's duties were assigned to him by Defendant. Besides his normal responsibility of driving the General Counsel to and from work, Martinez was required to perform additional duties, including, but not limited to, running errands for the General Counsel, cleaning the car, driving people to and from the airport at the General Counsel's request, driving the General Counsel to and from department and/or grocery stores, picking up laundry for the General Counsel, driving the General Counsel's wife and/or children at the General Counsel's request to and from a given location, and carrying the General Counsel's materials down from the office to the car.

27. Defendant also failed to reimburse Plaintiff for his expenses incurred while performing his job duties, including, but not limited to, five parking tickets that Plaintiff was issued while performing his job duties.

28. Defendant failed to accurately record the amount of time worked by Martinez, as required by the FLSA and NYLL.

29. Defendant failed to furnish Martinez with proper annual wage notices, as required by the NYLL.

30. Defendant failed to furnish Martinez with a proper wage statement with every payment of wages, as required by the NYLL.

**Plaintiff suffered a heart attack and was terminated due to his disability.**

31. On or around the morning of December 26, 2015, Plaintiff informed Samier (Last Name Unknown) ("Samier"), an administrative supervisor at the Algerian Consulate, that he was having chest pains and needed to go to the hospital. Samier called Plaintiff back and gave him

permission to drive to the hospital. As Plaintiff began driving home to Brooklyn he realized that the pain was not subsiding and decided to stop at the Interfaith Medical Center which he was driving past on Atlantic Avenue, Brooklyn. Plaintiff then parked the car at Interfaith Medical Center and walked in to be treated. Plaintiff was treated for a heart attack, and began having several tests done. Eventually, the doctors explained to him that he needed to be transferred to NY Methodist Hospital (hereinafter, the "Hospital"), and Plaintiff was transported by an ambulance to the Hospital. Plaintiff continued to have several tests done to monitor him and his heart condition.

32. On or around December 27, 2015, Plaintiff called Samier and explained that he was going to be in the Hospital for a while because he required heart surgery, and additional time for recovery. Plaintiff also told Samier that he had the car keys at the Hospital with him and Samier could pick them up, but the car was still at Interfaith Medical Center. Samier told Plaintiff that he would come by sometime that afternoon to obtain the keys, pick up the car, and then return the car to the garage in Manhattan. Later that day, Samier stopped at Plaintiff's room at the Hospital to pick up the car keys, and he wished Plaintiff well in his surgery and recovery. Plaintiff explained to Samier where he parked the car at Interfaith Medical Center, and gave Samier directions to the garage in Manhattan for Samier to park the car. Plaintiff also informed Samier that he was obviously unable to go back to work until further notice due to his impending surgery.

33. On or about December 30, 2015, Plaintiff had open heart surgery. As per his doctor's orders, Plaintiff had to stay under the Hospital's care until at least January 5, 2016 to be monitored while he began his recovery from heart surgery. On or about January 5, 2016, Plaintiff was officially discharged from the Hospital.

34. The following morning, on or about January 6, 2016, Plaintiff tried calling Samier to inform him that he was out of the hospital. When Samier didn't answer, Plaintiff sent him a text message explaining that he was discharged from the Hospital the night before, had documents to give him (referring to his condition and surgery), and that he needed to go to the pharmacy to pick up his new medications. Samier neither returned Plaintiff's call, nor responded to Plaintiff's text message.

35. After several weeks of not receiving any communications from Defendant, on or about February 2, 2016, Plaintiff sent a text message to Samier informing him of his current status. In that regard, Plaintiff explained that he had a checkup scheduled for February 4, 2016 with his cardiologist, at which point he would find out when he could return to work. Plaintiff also wrote that he would inform the Consulate as soon as he knew when he could return to work, and that he would bring a doctor's note for his absence. However, once again, Samier did not respond to Plaintiff's text message, nor did Defendant reach out via telephone.

36. On or about February 4, 2016, Plaintiff faxed his doctor's note to Defendant's office stating that Plaintiff was admitted to the Hospital on December 26, 2015, had open heart surgery on December 30, 2015, and was cleared to return to work with no restrictions on February 22, 2016.

37. Plaintiff sent another text message to Samier on or about February 18, 2016 to inform him that he was cleared and ready to return to work on Monday, February 22, 2016. Moreover, he requested that Samier contact the garage to let them know he could pick up the car.

38. Not until later that day, on February 18, 2016, did Plaintiff find out via an e-mail from Defense Counsel that Defendant had in fact terminated him, effective January 18, 2016.

This alleged termination occurred on January 18, 2016, even though Plaintiff was never given any documents, nor was this ever communicated to him directly.

39. Defendant's supposed reasoning for Plaintiff's termination was that he had been absent from work. However, Plaintiff was clearly unable to work due to his disability as he suffered from a heart attack and subsequent open heart surgery. Moreover, Defendant was aware of Plaintiff's condition, and that he required time to recover. Thus, any non-discriminatory reasoning provided by Defendant would clearly be pretext, as Defendant knew Plaintiff was disabled and unable to return to work, and terminated Plaintiff due to his disability.

40. Moreover, despite Plaintiff's efforts to regain his employment, Defendant has unequivocally stated that Plaintiff will not be rehired.

41. Pursuant to, and as required by §8-502 of the New York City Human Rights Law, Plaintiff has also served a copy of this complaint upon the City Commission on Human Rights and corporation counsel.

## FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**

42. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

43. At all relevant times, Plaintiff has been employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or has been engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

44. At all relevant times, Plaintiff was or has been an employee within the meaning of 29 U.S.C. §§ 201 *et seq.*

45. At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed "employee[s]," including Plaintiff.

46. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendant and protect Plaintiff.

47. Defendant has failed to pay Plaintiff overtime wages for all hours that he worked in excess of 40 hours in a work week.

48. Plaintiff at all times relevant has been a non-exempt employee of Defendant.

49. Defendant's unlawful conduct, as described in this Complaint, has been willful and intentional. Defendant was aware or should have been aware that the practices described herein were unlawful. Defendant has not made a good faith effort to comply with the FLSA with respect to compensation of Plaintiff.

50. Because Defendant's violations of the FLSA has been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq*.

51. As a result of Defendant's violations of the FLSA, Plaintiff has been deprived of overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## SECOND CAUSE OF ACTION
### New York Labor Law – Overtime Wage

52. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

53. At all times relevant, Plaintiff has been an employee of Defendant, and Defendant has

been an employer of Plaintiff within the meaning of NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

54. At all times relevant, Plaintiff was been covered by the NYLL.

55. At all times relevant, Plaintiff has been a non-exempt employee of Defendant.

56. Defendant has failed to pay Plaintiff the overtime wages to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times his regular hourly rate of pay – for all hours worked in excess of 40 per workweek.

57. Defendant has failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

58. Through Defendant's knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per week, Defendant has willfully violated NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

59. Due to Defendant's violations of the NYLL, Plaintiff is entitled to recover from Defendant his unpaid overtime wages, liquidated damages, as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Unlawful Deductions from Wages**

60. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

61. Defendant has made unlawful deductions from the wages of Plaintiff.

62. The deductions made from the wages of Plaintiff were not expressly authorized in writing by Plaintiff, and were not for the benefit of Plaintiff.

63. Defendant's unlawful deductions include, but are not limited to: charges for parking tickets.

64. By Defendant's knowing or intentional efforts to permit unauthorized deductions from the wages of Plaintiff, Defendant has willfully violated NYLL, Article 6, §§ 190 *et seq.*

65. Due to Defendant's willful violations of the NYLL, Plaintiff is entitled to recover from Defendant the amounts of all unlawful deductions, liquidated damages as provided for by the NYLL, Article 6 § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**

66. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

67. Defendant has failed to furnish Plaintiff with proper annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as his primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

68. Through their knowing or intentional failure to provide Plaintiff with proper annual wage notices required by the NYLL, Defendant has violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

69. Due to Defendant's violations of NYLL, Article 6, § 195(1) prior to December 31, 2014, Plaintiff is entitled to statutory penalties of fifty dollars for each week that Defendant failed to provide Plaintiff with a proper annual wage notice, or a total of two thousand five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

70. Due to Defendant's violations of NYLL, Article 6, § 195(1) since December 31, 2014, Plaintiff is entitled to statutory penalties of fifty dollars for each work day that Defendant failed to provide Plaintiff with a proper annual wage notice, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**

71. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

72. Defendant has failed to furnish Plaintiff with a statement with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

73. Through their knowing or intentional failure to provide Plaintiff with accurate wage statements required by the NYLL, Defendant has violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

74. Due to Defendant's violations of NYLL, Article 6, § 195(3) prior to December 31, 2014, Plaintiff is entitled to statutory penalties of one hundred dollars for each workweek that Defendant failed to provide Plaintiff with an accurate wage statement, or a total of two thousand five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

75. Due to Defendant's violations of NYLL, Article 6, § 195(3) since December 31, 2014, Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each work day that Defendant failed to provide Plaintiff with an accurate wage statement, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### SIXTH CAUSE OF ACTION
### New York City Human Rights Law – Disability Discrimination

76. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

77. Plaintiff suffered from a disability, within the meaning of The New York City Human Rights Law, N.Y.C. Admin. Code §8-102.

78. By and through Defendant's course of conduct, Defendant, its managers, agents and/or employees' agents unlawfully discriminated against Plaintiff because of his disability in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §8-107 *et seq*.

79. Plaintiff, who suffered from a heart attack and had open heart surgery, is a member of a protected class and was treated differently than others outside his protected category while employed by Defendant.

80. Defendant, its managers, agents and/or employees engaged in such discriminatory conduct intentionally and maliciously, and showed a deliberate, willful, wanton and reckless

disregard of Plaintiff and his rights under the New York City Human Rights Law, by subjecting him to discrimination based upon his disability.

81. The conduct described in this Complaint was unwelcome and opposed by Plaintiff.

82. Plaintiff requested a reasonable accommodation, that he be allowed to take time off to recover from his medical condition.

83. Defendant did not effectively communicate, follow, enforce or properly instruct its managers, agents and/or employees of its policy against discrimination.

84. Defendant is directly and vicariously liable for said disability based discrimination.

85. As a direct and proximate result of Defendant's unlawful discriminatory actions, Plaintiff has suffered damages and injuries, including, but not limited to, loss of pay and emotional distress.

86. That the aforesaid conduct of Defendant, its managers, agents and/or employees engaged in such discrimination intentionally and maliciously, and showed a deliberate, willful, wanton and reckless disregard of Plaintiff, and deprived him of his rights under the New York City Human Rights Law, thereby entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court enter judgment in his favor against Defendant and grants the following relief:

A. Unpaid overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

B. Unpaid overtime pay, unlawful deductions, liquidated damages, interest, and other unpaid wages pursuant to NYLL Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*,

and the supporting New York State Department of Labor regulations;

C. Statutory penalties of fifty dollars for each workweek that Defendant failed to provide Plaintiff with wage notices, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

D. Statutory penalties of one hundred dollars for each workweek that Defendant failed to provide Plaintiff with accurate wage statements, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

E. Statutory penalties of fifty dollars for each workday that Defendant failed to provide Plaintiff with wage notices, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

F. Statutory penalties of two hundred and fifty dollars for each workweek that Defendant failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

G. An award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, seniority, and other benefits of employment;

H. An award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all non-monetary damages, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, anxiety, loss of self esteem, loss of self confidence, loss of personal dignity and any other physical and mental injuries;

I. An award of punitive damages in an amount to be determined at trial;

J.        Pre-judgment interest and post-judgment interest;

K.        Reasonable attorneys' fees, costs and expenses incurred in the prosecution of the action; and

L.        Such other relief as this Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury.

Dated:    New York, New York
          March 31, 2016

                                          Respectfully submitted,

                                          /s/ Brian S. Schaffer
                                          Brian S. Schaffer

                                          **FITAPELLI & SCHAFFER, LLP**
                                          Brian S. Schaffer
                                          Jeffrey H. Dorfman
                                          28 Liberty Street, 25th Floor
                                          New York, New York 10005
                                          Telephone: (212) 300-0375
                                          Fax: (212) 481-1333

                                          *Attorneys for Plaintiff*

# FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in a lawsuit against the Algerian Consulate and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Jose R Martinez (Mar 24, 2016)
Signature

## Jose R Martinez
Full Legal Name (Print)