```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

JOSE MARTINEZ,  :

               Plaintiff,  :  16 Civ. 2390 (HBP)

  -against-  :  CORRECTED OPINION
                                  AND ORDER OF DISMISSAL[1]

CONSULATE GENERAL OF ALGERIA  :
IN NEW YORK,
                                 :
               Defendant.
                                 :
------------------------------------X

      PITMAN, United States Magistrate Judge:

      This matter is before me on the parties' joint application to approve the parties' settlement (Docket Item 21). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

      The plaintiff formerly worked for the Consulate General of Algeria in New York (the "Consulate") as a chauffeur and seeks, by this action, to recover unpaid overtime premium pay and damages for wrongful termination. The overtime claims are brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law; plaintiff's wrongful

---

[1]This Opinion and Order corrects word-processing and typographical errors that exist in the Opinion and Order issued on November 15, 2016. It is substantively identical to the earlier Opinion and Order of Dismissal.

termination claim is asserted under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et seq. Plaintiff also asserts claims under the Labor Law based on defendant's alleged failure to maintain certain records and to provide certain notices and defendant's allegedly unlawful deductions from plaintiff's wages.

    Plaintiff alleges that he was employed as the personal driver of the General Counsel of the Consulate from November 20, 2011 through January 18, 2016. Plaintiff claims that he received a set monthly salary of $2,895.00 with no overtime premium pay despite the fact that, according to plaintiff, he routinely worked 60 hours per week. Plaintiff claims that he is owed $84,320.00 in unpaid overtime, liquidated damages under the FLSA in the amount of $55,044.00, liquidated damages under the Labor Law in the amount of $84,320.00 and $7,500.00 for wage notice violations. Plaintiff's submissions do not quantify the amount due as a result of the allegedly illegal deductions from plaintiff's wages.

    Plaintiff's wrongful termination claim arises from incidents that occurred in late December 2015 and early 2016. On December 26, 2015, plaintiff drove home in the Consulate's car. Plaintiff claims he began experiencing chest pains on the way home, stopped at the Emergency Department of Interfaith Medical

Center in Brooklyn and was subsequently admitted to New York Methodist Hospital for a heart attack. Plaintiff underwent open heart surgery on December 30, 2016. Plaintiff states that he was unable to return to work until February 2016 and that he was wrongfully terminated due to his disability on January 18, 2016. Plaintiff seeks wrongful termination damages of $150,000.00.

Defendant takes issue with the complaint on multiple grounds. First, the Consulate claims that hiring a chauffeur does not constitute commercial activity within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et seq. ("FSIA"), and that it is, therefore, entitled to sovereign immunity with respect to all of plaintiff's claims. Even if it were not immune, the Consulate claims that plaintiff's overtime claim is inflated in terms of both the hours plaintiff worked and his hourly rate. The Consulate claims that although plaintiff occasionally worked more than 40 hours per week, plaintiff's claim that he routinely worked 60 hours per week is grossly overstated. In addition, the Consulate claims that plaintiff's overtime claim is further overstated because plaintiff has calculated his regular hourly rate assuming that his salary was intended to compensate him for only 40 hours per week. The Consulate claims that the correct way to calculate plaintiff's regular hourly is to assume that the salary was intended to

provide compensation for all the hours plaintiff actually worked. Using a regular work week of 50 hours per week, which the Consulate claims is still overstated, the Consulate claims that plaintiff's unpaid overtime wages are approximately $9,200.00. Finally, with respect to plaintiff's wrongful termination claim, the Consulate claims that plaintiff was terminated for taking the Consulate's car home without authorization and for being absent for an extended period of time without explanation.  The Consulate contends that prior to his termination, plaintiff never contacted the Consulate to explain his absence, to request an accommodation or to advise when he would be able to return to work.

The parties have agreed to a settlement in the total amount of $65,000.00.  The proposed settlement further provides that plaintiff's counsel will receive $21,945.33 and that the balance of $43,054.67 will be paid to plaintiff.  The amount allocated to counsel appears to be comprised of the $400.00 filing fee plus one-third of the remaining settlement proceeds, i.e., $400.00 + ($64,600.00 ÷ 3).  The settlement agreement does not allocate the settlement figure between plaintiff's FLSA/Labor Law claims and his wrongful termination claim.

I held a lengthy settlement conference on July 8, 2016 that was attended by the principals and their counsel.  Although

4

the parties did not settle at the conference, they reported the settlement during a follow-up conference call on July 22, 2016.

> Court approval of an FLSA settlement is appropriate
>
> "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (inner quotation marks and citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Beckman v. Keybank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (Ellis, M.J.), citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-54 (11th Cir. 1982). The presumption of fairness in this case is bolstered by the caliber the parties' counsel. Based upon their pre-conference submissions and their performance at the settlement confer-

ence, it is clear to me that all parties are represented by counsel who are known to me to be extremely knowledgeable regarding all issues in the case and who are well suited to assess the risks of litigation and the benefits of the proposed settlement.

In <u>Wolinsky v. Scholastic, Inc.</u>, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(Inner quotations and citations omitted). The settlement here satisfies these criteria.

The estimates of plaintiff's unpaid overtime damages range from $9,200.00 to $84,320.00. Thus, the settlement figure represents either a substantial multiple of plaintiff's unpaid overtime damages or a substantial fraction of those damages.

Second, the settlement will entirely avoid the burden, expense and aggravation of litigation. Plaintiff's case rests

largely on plaintiff's oral testimony and the reasons for his termination.  Trial preparation would require several depositions to explore these issues.  The settlement avoids the necessity of conducting these depositions.

Third, the settlement will enable plaintiff to avoid the risk of litigation.  The Consulate's sovereign immunity defense appears to present a substantial obstacle to any recovery by plaintiff.  In Crum v. Kingdom of Saudi Arabia, No. Civ. A. 05-275, 2005 WL 3752271 (E.D. Va. July 13, 2005), a chauffeur employed by the Royal Embassy of Saudi Arabia alleged that he had been terminated illegally and was the victim of discrimination on the basis of his national origin.  The Court granted defendants' motion for judgment on the pleadings and dismissed the action, finding that the hiring of a chauffeur was not commercial activity within the meaning of the FSIA and that defendants were, therefore, entitled to sovereign immunity.  Although there are other authorities involving different facts suggesting that a sovereign immunity defense may not be available to the Consulate, see El-Hadad v. United Arab Emirates, 496 F.3d 658, 664 n.2 (D.C. Cir. 2008), the similarity between the facts here and the facts in Crum demonstrate that defendant's sovereign immunity defense is substantial.

7

Fourth, because I presided over the settlement conference at which the parties came close to the $65,000 settlement figure, I know that the settlement is the product of arm's-length bargaining between experienced counsel. Both counsel represented their clients zealously at the settlement conference.

Fifth, there are no factors here that suggest the existence of fraud. The settlement was reached after a mediation before the Court and the settlement figure is not far off from the numbers discussed at that mediation. These facts further negate the possibility of fraud or collusion.

The settlement agreement also provides that, after deduction of out-of pocket costs, one-third of the settlement fund will be paid to plaintiff's counsel as a contingency fee. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("courts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances"); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee

8

arrangement "is routinely approved by the courts in this Circuit"); Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.) ("a fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP), 2012 WL 2384419 at *6 (S.D.N.Y. June 22, 2012) (Freeman, D.J.).

Accordingly, for all the foregoing reasons, I approve the settlement in this matter. In light of the settlement, the action is dismissed with prejudice and without costs. The Clerk of the Court is requested to mark this matter closed.

Dated:  New York, New York
        November 16, 2016

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel